11th CIRCUIT CASE NO.: _____25-10016-B_____ /

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

### FRANK E. POLO, SR.

#### Plaintiff/Appellant,

#### v.

### SCOTT BERNSTEIN, et al.

#### Defendants/Appellees,

On Appeal from the Southern District of Florida
Case No. 1:23-cv-21684-RNS
Miami-Dade County Division;
The Hon. Robert N. Scola, Jr.

---

### AMENDED APPELLANT'S INITIAL BRIEF

---

Frank E. Polo Sr.
Pro Se
1475 SW 8th St Apt 411
Miami, FL. 33135
Phone: (305) 901-3360
Email: Frank.Polo@msn.com

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ............................................................. vi

STATEMENT REGARDING ORAL ARGUMENT ........................................... viii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES ON APPEAL ......................................................1

STATEMENT OF THE CASE...............................................................2

   1.    PROCEDURAL HISTORY ..............................................................2

   2.    FACTUAL BACKGROUND .............................................................3

      (A)   Initial Complaint and Immediate Dismissal ...........................................3

      (B)   Amendments and Repeated Dismissals...................................................4

      (C)   Judicial Immunity Ruling and Contradictions on September 29, 2023 ...5

      (D)   Third Complaint and Service Order Contradiction .................................5

      (E)   Final Complaint and Motion to Recuse and Delayed Rulings ................7

      (F)   Post-Judgment Motions and New Evidence............................................8

      (G)   Undisclosed Political Ties .......................................................9

   3.    Summary of the Argument.....................................................10

ARGUMENT ...............................................................................11

   4.    ISSUE No. 1 ..........................................................................11

      (A)   STANDARD OF REVIEW IS DENOVO AND ABUSE OF
DISCRETION..............................................................................11

(B)     The Judge's Failure to Recuse Violated the Fifth Amendment right to Due Process, the First Amendment Access to the Court, and an abuse of Discretion under 28 U.S.C. § 455.................................................................12

5.     ISSUE NO. 2:.........................................................................................15

(A)     STANDARD OF REVIEW IN ISSUE 2 IS ABUSE OF DISCRETION 15

(B)     ARGUMENT: The Lower Court Erred by Dismissing the Complaint Without Properly Assessing Whether It Stated a Claim for Relief...................15

(C)     The Complaint States Plausible Claims Under § 1983 ..........................17

6.     ISSUE No. 3 ..........................................................................................28

(A)     Standard of Review de Novo.................................................................28

CONCLUSION ................................................................................................29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,

TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS............1

CERTIFICATE OF SERVICE .................................................................................1

## TABLE OF AUTHORITIES

## CASE LAW:

**Bank of Jackson Cnty. v. Cherry**, 980 F.2d 1362, 1366 (11th Cir. 1993)...........17

**Bill Johnson's Restaurants, Inc. v. NLRB**, 461 U.S. 731, 741 (1983) ...............12

**Bounds v. Smith**, 430 U.S. 817 (1977)...................................................................13

**Crawford v. MARRIOTT INTERNATIONAL, INC.** (11th Cir, 2021) ...........11

**Downing v. MIDLAND FUNDING, LLC**, No. 2: 15-cv-00737-RDP (N.D. Ala.

Jan. 12, 2016).....................................................................................................2

**Emory v. Peeler**, 756 F. 2d 1547 (11th Cir. 1985)...................................................22

**Fullman v. Graddick**, 739 F. 2d 553 (11th Cir. (1984) ..........................................23

**Giles v. Garwood**, 853 F.2d 876, 878 (11th Cir. 1988)..........................................11

**Gonzalez v. Trevino**, 144 S. Ct. 1663 (2024) .........................................................20

**Haines v. Kerner**, 404 U.S. 519, 520 (1972) ..........................................................16

**Hartman v. Moore**, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)

.................................................................................................................................20

**Hopper v. Solvay Pharm., Inc.**, 588 F.3d 1318, 1324 (11th Cir. 2009) ...............28

**Lake Carriers' Association v. MacMullan**, 406 U.S. 498, 506, 92 S.Ct. 1749,

1755, 32 L.Ed.2d 257 (1972) ................................................................................22

**Lewis v. Casey,** 518 U.S. 343, 351 (1996) ..............................................................12

**Liljeberg v. Health Services Acquisition Corp.**, 486 U.S. 847 (1988)................13

**Lovett v. Ray**, 327 F. 3d 1181 (11th Cir.2003) .........................................................6

**Ornelas v. United States**, 517 U.S. 690 (1996) .....................................................11

**Ostrer v. Aronwald**, 567 F.2d 551 (2d Cir.1977)...................................................23

**Petlechkov v. Gilmer**, Court of Appeals, (11th Cir.), No. 24-11399 (2025).........16

**Tannenbaum v. United States**, 148 F.3d 1262, 1263 (11th Cir. 1998) ...............16

**United States v. Bailey**, 175 F.3d 966, 968 (11th Cir. 1999).................................11

**Washington v. Glucksberg,** 521 U.S. 702, 720-721 (1997)...................................12

**Weiland v. Palm Beach Cty. Sheriff's Office**, 792 F.3d 1313 (11th Cir. 2015) ...2, 10, 11, 15, 16, 17, 23, 26, 28

**Woodford v. Ngo,** 548 U.S. 81, 91 (2006) ...........................................................12

## STATUTORY PROVISIONS:

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1343 ...............................................................................................1

28 U.S.C. § 1367 ............................................................................................1, 7

28 U.S.C. § 1915(e)(2)(B) ........................................................................ 3, 4, 5, 6

28 U.S.C. § 455 ..................................................................................... 2, 7, 12, 13

28 U.S.C. §§ 1331 ............................................................................................1

28 U.S.C. §1915 ..............................................................................................13

42 U.S.C. § 1983 ............................................................. 1, 3, 11, 17, 21, 23, 26

42 U.S.C. § 1988 ..............................................................................................1

## RULES:

11th Cir. R. 26.1-1 ......................................................................................... vi

11th Cir. R. 28-1.............................................................................................. viii

Fed. R. App. P. 32 ............................................................................................1

Fed. R. Civ. P. 4(c)(3) ...................................................................................13

Fed. R. Civ. P. 57 ...................................................................................... 22, 23

Fed. R. Civ. P. R. 59(e).........................................................................................8, 9

**CONSTITUTIONAL PROVISIONS:**

U.S. Const. 14th Amend. ........................................................................ 2, 19, 21, 22

U.S. Const. 1st Amend.......................................................... 2, 12, 20, 21, 22, 25, 29

U.S. Const. 5th Amend. ............................................................................. 2, 12, 29

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

The Appellant, FRANK POLO, pursuant to 11th Cir. R. 26.1-1(a), certifies that the following persons, associations of persons, firms, partnerships, or corporations may have an interest in the outcome of this case:

**Alonso, Jennifer Rebeca Perez**; Counsel for Segarra and Segarra & Associates.

**Archdiocese of Miami, Inc.**; Parent company to St. Thomas University.

**Beasley, Joseph**; Counsel for Segarra and Segarra & Associates.

**Beasley, Demos & Brown, LLC**; Firm representing Manuel Segarra and Segarra & Associates, P.A.

**Bernstein, Hon. Scott**; Defendant/Appellee.

**Del Rey, Hon. Marcia**; Not a party due to failure to properly join her.

**Demos, Stephanie**; Counsel for Segarra and Segarra & Associates.

**Diaz, Roberto**; Counsel for St. Thomas University.

**Florida Third District Court of Appeals**; State court, not a party due to failure to

properly join it.

**Florida Office of the Attorney General**; Representing the Appellees state actors.

**Florida Office of State Court Administration**; Representing the Appellee state actors.

**Goodman, Hon. Jonathan**; Magistrate Judge - SDFL.

**Guard, John**; Acting Attorney General, Representing State Appellees.

**Hernandez, Merlin**; Not a party due to failure to properly join her.

**J. Patrick Fitzgerald & Assoc., P.A.**; Firm representing St. Thomas University.

**Logue, Hon. Thomas**; Not a party due to failure to properly join him.

**Martinez, Randolph**; Not a party due to failure to properly join him.

**Multack, Hon. Spencer**; Not a party due to failure to properly join him.

**Polo, Frank**; Plaintiff/Appellant.

**Scola, Hon. Robert**; U.S. District Court Judge - SDFL.

**Segarra & Associates, P.A.**; Not a party due to failure to properly join it.

**Segarra, Manuel, III**; Not a party due to failure to properly join him.

**St. Thomas University, Inc.**; Defendant/Appellee.

**Sutter, Christopher**; Assistant Attorney General, appellate counsel – State Appellees.

The Appellant, also certifies, pursuant to 11th Circuit Rule 26.1-3(b), that to the best of his knowledge, no publicly traded company or corporation has an interest in the outcome of the case or appeal.

By: _____ /s/
APPELLANT
Frank Polo
1475 SW 8th St. Apt. 411
Miami, FL. 33135
Phone: 305-901-3360
E-Mail: Frank.Polo@msn.com

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 11th Cir. R. 28-1(c), the Appellant does not request an oral argument. Oral argument is unnecessary because this case does not present a novel legal issue requiring clarification, and the law surrounding this appeal is well settled in the Eleventh Circuit Court of Appeals and the U.S. Supreme Court.

## JURISDICTIONAL STATEMENT

**District Court's Subject Matter Jurisdiction:** Jurisdiction is proper under 42 U.S.C. §§ 1983, and federal question jurisdiction exists under 28 U.S.C. §§ 1331 and 28 U.S.C. § 1343. The District Court may grant declaratory relief under 28 U.S.C. § 2201, injunctive relief and damages under 28 U.S.C. § 1343(a), and attorneys' fees under 42 U.S.C. § 1988. The Court also has supplemental jurisdiction over all related claims under 28 U.S.C. § 1367.

**Appellate Jurisdiction**: This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1291, as this is an appeal from a final decision of the United States district court for the Southern District of Florida, which is within the Eleventh Circuit. Furthermore, on **July 24, 2024**, the United States District Court for the Southern District of Florida entered judgment (**VOL 2- ECF: 56**) in the lower court case. The plaintiff filed a timely Rule 59(e) motion, which the lower court disposed of on **December 4, 2024** (**VOL 2- ECF: 72**). The plaintiff has since filed a timely notice of appeal on **January 3, 2025**, seeking a review of the district court's decision by this Honorable Court, thereby conferring jurisdiction over this appeal.

## STATEMENT OF THE ISSUES ON APPEAL

**ISSUE No. 1:** Whether the district judge's failure to recuse himself—despite his professional and political connections to parties involved—violated the Appellant's constitutional rights to access to the court and to a fair and just

proceeding under the First and Fifth Amendments and constituted an abuse of discretion under 28 U.S.C. § 455, thereby requiring vacatur of the final judgment and reassignment to a different judge.

**ISSUE No. 2**: Whether the lower court erred in failing to apply the correct legal standard in determining whether the pro se pleading was "informative enough to permit a court to readily determine if it states a claim upon which relief can be granted," as established in **Downing v. MIDLAND FUNDING, LLC**, No. 2: 15-cv-00737-RDP (N.D. Ala. Jan. 12, 2016), and derived from **Weiland v. Palm Beach Cty. Sheriff's Office**, 792 F.3d 1313 (11th Cir. 2015).

**ISSUE No. 3:** Whether the court failed to apply the correct principle of law by ignoring the long-standing principle in the 11th Circuit that states, "a dismissal with prejudice, whether on motion or sua sponte, is an extreme sanction that may be properly imposed only when: `(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice[,]'" (**Weiland**, 792 F. 3d 1313 at 1331. Fn. 10).

## STATEMENT OF THE CASE

## 1. PROCEDURAL HISTORY

1. On **May 4, 2023**, Appellant filed suit in the U.S. District Court for the Southern District of Florida, alleging violations of the First and Fourteenth

Amendments, Florida law, and 42 U.S.C. § 1983. The court struck the initial and first amended complaints as impermissible shotgun pleadings on **May 8, 2023**, and **June 8, 2023**, respectively. Following multiple amendments and procedural motions—including requests for in forma pauperis (IFP) status, appointment of a special process server, and case reopening—the court granted IFP status on **September 29, 2023**, without granting the appointment of the special process server, and subjected the case to screening under 28 U.S.C. § 1915(e)(2)(B).

2. Despite additional amendments, the court dismissed the case without prejudice on **November 9, 2023**. After reconsideration, the court allowed further amendment on **February 27, 2024**, but ultimately dismissed the Fourth Amended Complaint on **July 23, 2024**, again citing shotgun pleading deficiencies. Appellant's motions for judicial recusal, reconsideration, and reassignment were denied, and final judgment was entered on **July 24, 2024**. Following post-judgment motions challenging the recusal and dismissal rulings, which were denied on **December 4, 2024**, Appellant filed this appeal on **January 3, 2025**. The court never did a full analysis of whether the Appellant had stated a cause of action.

## 2. FACTUAL BACKGROUND

### (A)    Initial Complaint and Immediate Dismissal

3. **May 4, 2023**: Appellant filed his initial complaint and paid the filing fee.

4. **May 8, 2023**: Without service on any party or a motion to dismiss, the court struck the complaint as a "shotgun pleading" four days after filing the initial complaint.

### (B)    Amendments and Repeated Dismissals

5. **May 23, 2023**: Appellant filed his First Amended Complaint.

6. **June 8, 2023**: The Court struck the First Amended Complaint as a "shotgun pleading."

7. **June 20, 2023**: The appellant filed a Motion for Leave to Proceed in Forma Pauperis and a Motion for Appointment of a Special Process Server.

8. **June 21, 2023**: The Court immediately closed the case for a lack of a "viable complaint," and denied the abovementioned pending motions.

9. **August 22, 2023**: Appellant filed a Second Amended Complaint.

10. **August 30, 2023**: Renewed Motion to Proceed in Forma Pauperis ("MTPFP") and Motion for Appointment of a Special Process Server.

11. **September 24, 2023**: Motion to Reopen the Case filed.

12. **September 29, 2023**: The Court denied the Second Amended Complaint as a "shotgun pleading" but granted the Motion to Proceed in Forma Pauperis with the sole objective of screening the case for dismissal under 28 U.S.C. § 1915(e)(2)(B) as shown by the fact that was not granting the requested Motion for Service of

Process by U.S. Marshal, which the court had not discretion to denied one the Appellant was granted Forma Pauperis Status.

### (C)    Judicial Immunity Ruling and Contradictions on September 29, 2023

13. The court acknowledged that "Polo sought and procured Judge Bernstein's recusal from his case, in January 2019," **VOL 2- ECF: 22 (P:327, ¶:2, L:6 )** before sending the letter to the school, but still asserted that it "appears that all of Polo's claims against Judge Bernstein in his individual capacity are barred by judicial immunity" despite knowing that Bernstein was not the Judge in the Appellant's case anymore and was using official court letterhead to influence St. Thomas University in disciplinary proceedings against the Appellant.

### (D)    Third Complaint and Service Order Contradiction

14. **October 24, 2023**: Appellant filed a Third Amended Complaint.

15. **November 9, 2023**: The Court dismissed the case based on 28 U.S.C. § 1915(e)(2)(B), even though the Appellant had paid the filing fee, and the benefit request, the MTPFP, was never granted.

16. This time the court, generally, claimed that the Appellant "fails to set forth facts establishing that, in communicating with administrators at St. Thomas, Judge Bernstein deprived Polo of a federal right through the exercise of his authority through his official position as a state court judge." **VOL 2- ECF: 26 (P: 410, ¶:4,**

**L:10)** Despite the Appellant adopting the fact that established the Judge used the court letterhead, and his official signature to influence STU. **VOL 2- ECF: 25 (P: 339 No: 54).**

17. Additionally, the court stated that "the vast majority of Polo's claims relate to events that occurred at least four years before Polo initiated this case and so, as explained in the Court's omnibus order,... are time barred" **VOL 2- ECF: 26 (P: 410, ¶:2, L:1-3) )** without taking into account that the under continuing violation doctrine all violation, like access to the court, that continued until the present are not bar by the statute of limitations, so long as the last violation occurred within the statute of limitations.[1]

18. **December 8, 2023**: The appellant filed a Motion to Alter Judgment, arguing the court should not use 28 U.S.C. § 1915(e)(2)(B) to dismiss the case where it was approved solely to dismiss the case and not to confer the benefit for which it was filed.

19. **February 27, 2024**: Almost 3 months later and after eight (8) months since closing the case, the Court granted the Motion to Alter Judgment and ordered the

---

[1] *See* **Lovett v. Ray**, 327 F. 3d 1181 (11th Cir.2003)

Appellant to *serve a complaint it had also ruled defective*—contradicting its earlier rationale for closing the case. **VOL 2- ECF: 29 (P: 415, ¶:1, L:1-3).**

20. Additionally, instead of reinstating all pending motions, the Court vacated the order granting the Motion to Proceed in Forma Pauperis, which created a duty for the Court to allow Service of Process by U.S. Marshal under rule 4 and denied the Motion for Service of Process by U.S. Marshal.

**(E)    Final Complaint and Motion to Recuse and Delayed Rulings**

21. **April 29, 2024:** The Appellant filed his Fourth Amended Complaint (amended on **May 8, 2024**.)

22. **May 24, 2024**: The appellant discovered a possible conflict of interest, and filed a Motion to Recuse under 28 U.S.C. § 455 due to Judge Scola's 16-year association with Defendant Judge Bernstein, which he never disclosed before, his actions to benefit his ex-coworker, and asked the Court to disclose any ties to Appellant's political adversaries. **VOL 2- ECF: 41 (P: 459, No. 20(b)).**

23. On **July 11, 2024**: On July 11, 2024, Appellee St. Thomas University filed a motion to dismiss. They erroneously claimed that the Appellant failed to establish jurisdiction for state causes of action (despite the Appellant stating that 28 U.S.C. § 1367 was granting Jurisdiction to the court) and that, because they were a University, they are exempt from liability for breach of implied-in-law contract, gross negligence, and intentional infliction of emotional distress. They further claimed

they weren't state actors, despite Judge Bernstein's alleged improper influence resulting in the commencement of their preceding against the Appellant, as detailed in the complaint. **VOL 2- ECF: 53 (P: 465. ¶:1)**

24.**July 23, 2024**: Judge Scola denied the Motion to Recuse without addressing the Appellant's request to disclose conflicts of interest. **VOL 2- ECF: 54.**

25.**July 23, 2024**: The Court dismissed the case as a "shotgun pleading" without addressing Appellee's, STU, motion to dismiss on its merits, which creates the reasonable conclusion that it was because, a dismissal under Fed. R. Civ. P. 12, is scrutinized under a De Novo standard, while a dismissal for shotgun pleading is scrutinized under an abuse of discretion. **VOL 2- ECF: 55.**

26.**July 24, 2024**: Final judgment entered, dismissing all federal claims with prejudice. **VOL 2- ECF: 56.**

### (F)Post-Judgment Motions and New Evidence

27.**August 19, 2024** (Amended on **Aug 21, 2024**): The appellant filed a Fed. R. Civ. P. R. 59(e) Motion to Amend the Order Denying Recusal and the Final Judgment, which contained an attached legal brief. **VOL 2- ECF: 62 (P: 477).**

28.**November 19, 2024**: The appellant filed another motion to reassign the case and recuse the judge based on new ethical concerns, which were never addressed.

29.**December 4, 2024**: The Court issued another Omnibus Order denying all Rule 59(e) motions, falsely claiming the Appellant had not cited legal authority in his motions—despite the Appellant filing the abovementioned legal brief with supporting case law. **VOL 2- ECF: 72 (P: 487, ¶:2).**

### (G)    Undisclosed Political Ties

30.**December 4, 2024**: The Court stated that it never acknowledged any conflict because no conflict of interest existed. **VOL 2- ECF: 72 (P: 488, ¶:1, L:12-13)**

31.Public transcripts of the Confirmation hearings show Senator Marco Rubio—a listed political adversary of the Appellant—recommended Judge Scola for a federal appointment in June and July 2011 during congressional hearings.[2]

32.Public records show Judge Scola and Defendant Judge Bernstein worked together in the same court for 16 years, a relationship Judge Scola failed to disclose, which Judge Schola does not negate; however, he failed to disclose it, and downplayed it by saying that it was 10 years ago, implying there is an expiration date on long term relationships.

---

[2]    https://www.congress.gov/112/chrg/CHRG-112shrg76350/CHRG-112shrg76350.htm

33.The lower court judge knew that the Appellant was suing on behalf of his children (*See* **VOL 2- ECF: 22**, **26, and 29**) which is not permitted under Federal law[3]; however, he never disclosed such a clear mistake.

### 3.  Summary of the Argument

34.The Judge violated the Appellant's constitutional rights by engaging in biased actions that benefited his former colleague, Defendant Judge Bernstein, and failing to disclose a 16-year professional relationship, creating a conflict of interest. Despite the Appellant's repeated efforts to amend his complaint, the court dismissed it as a "shotgun pleading" without proper analysis. The Judge also failed to recuse himself despite concerns about political biases due to ties with the Appellant's political adversaries. This conduct demonstrated an abuse of discretion and a denial of a fair hearing.

35.The district court erred by dismissing the complaint without evaluating whether it stated a plausible claim for relief, as required under **Weiland v. Palm Beach County Sheriff's Office**. The court should have interpreted the Appellant's pro se complaint more leniently, considering the allegations of constitutional violations, including retaliation and due process deprivation. Had the court properly

---

[3] **Devine v. Indian River County School Board**, 121 F.3d 576 (11th Cir. 1997).

assessed the complaint, it would have found plausible claims that warrant further review under § 1983.

36. The dismissal with prejudice was an extreme and improper sanction, as it failed to meet the criteria outlined in **Weiland**, requiring a pattern of delay or willful contempt. The Appellant had made significant efforts to improve the complaint, reducing it from 140 pages to 40, organizing facts, and removing irrelevant details. The classification of the complaint as a "shotgun pleading" was incorrect, as it was organized and specific. The dismissal with prejudice would unfairly harm the Appellant, forcing him to litigate in a biased state court system. Therefore, the dismissal should be reversed.

## ARGUMENT

### 4. ISSUE No. 1

#### (A)    STANDARD OF REVIEW IS DENOVO AND ABUSE OF DISCRETION

37. This honorable Court reviews "a district court's denial of a motion to recuse or a motion to disqualify for abuse of discretion." **Crawford v. MARRIOTT INTERNATIONAL, INC.** (11th Cir, 2021) (citing **United States v. Bailey**, 175 F.3d 966, 968 (11th Cir. 1999); **Giles v. Garwood**, 853 F.2d 876, 878 (11th Cir. 1988).

38. However, constitutional claims, involving fundamental legal principles, are reviewed de novo.  See **Ornelas v. United States**, 517 U.S. 690 (1996) (de novo

review applied to 4th Amendment reasonable suspicion and probable cause challenges).

### (B)    The Judge's Failure to Recuse Violated the Fifth Amendment right to Due Process, the First Amendment Access to the Court, and an abuse of Discretion under 28 U.S.C. § 455.

39. The Due Process Clause of the Fifth Amendment guarantees litigants the fundamental right to a fair and impartial tribunal. A judge's failure to recuse when impartiality is in question constitutes a violation of both procedural and substantive due process. As the U.S. Supreme Court has recognized, due process ensures that litigants receive "a *reasonably adequate opportunity to raise constitutional claims before impartial judges*." **Woodford v. Ngo,** 548 U.S. 81, 91 (2006) (citing **Lewis v. Casey,** 518 U.S. 343, 351 (1996)).

40. The U.S. Supreme Court has repeatedly emphasized that the right to access the courts is a *fundamental* constitutional right protected by the U.S. Const. 1st Amend. As the Court held in **Woodford v. Ngo,** 548 U.S. 81 (2006)**:**

> "'[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.'" (citing **Bill Johnson's Restaurants, Inc. v. NLRB**, 461 U.S. 731, 741 (1983)).

41. Rights that are "'deeply rooted in this Nation's history and tradition'" like access to the court, receive Constitutional Protection. *See* **Washington v. Glucksberg,** 521 U.S. 702, 720-721 (1997)**.**

42. **Bounds v. Smith**, 430 US 817 (1977) the U.S. Sup. Ct. held that access to the court should be "meaningful and effective."

43. Moreover, as the U.S. Supreme Court recognized in **Bounds**, **430 U.S. 817** "[T]here is a 'fundamental constitutional right to access the courts'..."

44. Fed. R. Civ. P. 4(c)(3) creates a mandatory duty upon the court by stating that "[a]t the plaintiff's request, the court … must so order [that service be made by a United States marshal or deputy marshal] if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915."

45. In **Liljeberg v. Health Services Acquisition Corp.**, 486 U.S. 847 (1988) The Supreme Court emphasized that even the appearance of partiality can undermine public confidence in the judiciary and warrants vacatur. Moreover, the U.S. Sup. Ct. Stated:

> [P]roviding relief in cases such as this will not produce injustice in other cases; to the contrary, the Court of Appeals' willingness to enforce § 455 may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to *promptly disclose* them when discovered.
>
> Id., at 868.

46. Under **28 U.S.C. § 455(a)**, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute mandates recusal when a judge has personal bias or prejudice concerning a party or has a close connection to a party involved in the litigation.

47.The district judge's actions demonstrate a lack of impartiality, violating the Appellant's right of court access. This includes: (1) inconsistently applying procedural rules, dismissing the case as a "shotgun pleading" without merit screening; (2) obstructing service by closing the case for a "non-viable complaint," then reopening it eight months later and ordering service of a similar defective complaint; (3) failing to disclose relationships with a party and Appellant's political rival; (4) closing the case and dismissing related motions; (5) later approving the renewed motion to proceed in forma pauperis but not ruling on service; (6) misleading Appellant about Judge Bernstein's immunity despite acknowledging his lack of subject matter jurisdiction when interfering with Appellant's property rights; (7) misleading Appellant about the sufficiency of facts establishing Judge Bernstein's deprivation of federal rights; (8) ignoring Appellant's legal brief supporting Fed. R. Civ. P. 59(e) motion; (9) knowing all along that the Appellant was suing on behalf of his children, which is prohibited in the 11th Circuit, but remaining silent about it; and (10) using 28 U.S.C. § 1915(e)(2)(B) as a pretext for dismissal, evidenced by denying Appellant's mandatory requested relief.

48.Arbitrary application of rules, preventing service, and misleading statements suggest bias, denying the Appellant a fair hearing and court access. Judge Scola's undisclosed 16-year work relationship with Defendant Judge Bernstein, and ties to Appellant's political rival, raise conflict of interest concerns and undermine

impartiality. Judge Scola abused his discretion by not recusing himself, given this undisclosed relationship and actions benefiting his former colleague, warranting reversal and reassignment.

49. The judge's refusal to step aside despite his ties to key figures involved in the case creates an appearance of bias that undermines confidence in the judicial process. His inconsistent rulings, failure to disclose pertinent relationships, ignoring clear defects like the Appellant suing on behalf of his children, and ultimate dismissal of the case with prejudice—despite the procedural irregularities—demonstrate a clear abuse of discretion that warrants reversal and reassignment.

## 5. ISSUE NO. 2:

### (A)    STANDARD OF REVIEW IN ISSUE 2 IS ABUSE OF DISCRETION

50. This Court reviews a district court's dismissal of a complaint as a shotgun pleading for abuse of discretion. **Weiland**, 792 F.3d 1313, at 1320.

### (B)    ARGUMENT: The Lower Court Erred by Dismissing the Complaint Without Properly Assessing Whether It Stated a Claim for Relief

51. The district court improperly dismissed the Appellant's complaint without a substantive analysis of whether it stated a claim upon which relief could be granted.

52. This Court, and the U.S. Sup. Ct. liberally construe pro se pleadings. **Tannenbaum v. United States**, 148 F.3d 1262, 1263 (11th Cir. 1998) *see also* **Haines v. Kerner**, 404 U.S. 519, 520 (1972).

53. In **Weiland**, 792 F.3d 1313, at 1320, this honorable court held that "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See also* **Petlechkov v. Gilmer**, Court of Appeals, (11th Cir.), No. 24-11399 (2025) (vacating and remanding lower court's final Judgment when the complaint "provided the defendants with sufficient notice of the claims against them.")

54. A complaint is facially plausible where there is enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Ashcroft v. Iqbal**, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

55. Rule 12(e) provides in pertinent part that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

56. The district court in this case failed to follow the approach stated in **Weiland**, 792 F.3d 1313, dismissing Appellant's complaint outright rather than assessing whether it plausibly alleged a cause of action.

57. Furthermore, the lower court's dismissal is particularly problematic given the Appellant's pro se status, the court was required to construe the pleadings liberally. However, the district court disregarded this principle by failing to attempt any construction of the pleading, let alone liberally, and by striking multiple amended complaints without properly considering their substance, prioritizing form over substance.

58. Accordingly, the district court's dismissal should be reversed.

## (C)    The Complaint States Plausible Claims Under § 1983

59. For a § 1983 claim to allege a denial of procedural due process has three elements: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." **Bank of Jackson Cnty. v. Cherry**, 980 F.2d 1362, 1366 (11th Cir. 1993)

60. In this case, the complaint is meticulously organized. The facts pertaining to each defendant are presented in separate sections of the Statement of Facts, with only the relevant facts for each defendant included in their respective sections.

61. Each count is further subdivided to explain how each defendant's actions violated the plaintiff's constitutional rights under that specific count.

62. This structure ensures a clear, concise presentation, with a limited number of facts for each defendant's actions, illustrating how those actions violated the appellant's constitutional rights. The appellant also distinguished between Judge Bernstein's judicial acts, non-judicial acts, and actions committed after his recusal, i.e., those taken without jurisdiction.

63. The appellant's organizational approach resulted in 18 paragraphs detailing Bernstein's actions before recusal and 5 paragraphs addressing his acts after recusal. For St. Thomas University, there are 24 paragraphs in total. The facts concerning other defendants are not addressed here, as the appellant was unaware of the requirement to seek court permission to rejoin parties that were already part of the initial case. As a result, those defendants are not currently under the court's jurisdiction.

64. In sum, the appellant's approach led to: (1) 18 paragraphs for Bernstein's actions before recusal, and 5 paragraphs for his actions after recusal; (2) 24 paragraphs for St. Thomas University; and (3) exclusion of facts regarding other defendants, who are not presently under the court's jurisdiction due to the appellant's lack of awareness regarding the need to request permission to rejoin them.

65. The following is a summary of how the complaint stated a Plausible claim if it had been liberally construed:

## COUNT 1

66. **PROPERTY INTEREST:** The Plaintiff alleges an **implied contract** with STU, based on the terms of the "Student Handbook 2014-2015," which guaranteed his enrollment in the legal education program. This forms the basis of his property interest in continued enrollment and receipt of a JD degree and Tax Law Certificate.

67. Courts have recognized property interests in education where an implied or explicit contract exists between the student and the institution.

68. **LIBERTY INTEREST:** The Plaintiff also asserts a liberty interest in his good name, reputation, honor, and integrity, which are protected under the 14th Amendment. The claim that Judge Bernstein's letter to STU contained false allegations of ethical misconduct implicates these interests, as damage to reputation can affect future career opportunities.

69. Consequently, liberally construed, Plaintiff's Count 1 sufficiently alleges deprivation of property and liberty interest under § 1983 by (1) identifying protected property and liberty interests; (2) Alleging state action by a public official acting under color of state law; (3) Describes a lack of procedural safeguards (notice and opportunity to be heard).

## COUNT 2

70. Admittedly, the name of the count could be improved to clearly reflect the claim made within it: First Amendment Retaliation.

71. "'[T]he law is settled that as a general matter the First Amendment prohibits *government officials* from *subjecting an individual to retaliatory actions*, including criminal prosecutions, for speaking out.'" **Gonzalez v. Trevino**, 144 S. Ct. 1663 (2024) *quoting* **Hartman v. Moore**, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).

72. "At the first step, the plaintiff must demonstrate that he engaged in protected speech and that his speech was a `substantial' or `motivating' factor in the defendant's decision to take action against him." **Gonzalez**, 144 S. Ct. 1663 at 1670.

73. *Protected Property Right*: The Appellant established that he had a protected property right to continued enrollment at STU, arising from STU's contractual obligations to the Plaintiff

74. *Engagement in Protected Activities*: The Appellant states that he engaged in protected activities such as "(1) requesting the government to vacate the final Judgment based on the corrupt acts of the GAL, (2) pursuing legal action against BERNSTEIN's co-conspirators for their wrongful acts, and (3) MR. POLO, as part of his political campaign, making public statements, printing materials, and giving

interviews, all promising to combat judicial corruption in the 11TH JUDICIAL
CIRCUIT OF FLORIDA."

75. *Retaliatory Acts*: (1) The Appellant establishes that "Judge Bernstein, while
acting as a State Judge and without subject matter jurisdiction, retaliated against the
Plaintiff by engaging in the non-judicial act of sending a letter to STU on January
31, 2019, containing as an attachment his order of recusal (this, if true, overcomes
judicial immunity, establishes state action, and retaliation). Additionally, (2) it
established that Bernstein exercised his "judicial powers to terminate the Plaintiff's
property interest in MR. POLO's continued enrollment at STU (representing his
legal career) and his financial future, as retaliation for their engagement in the
Protected Activities."

76. The Appellant established that Judge Bernstein, by engaging in the retaliation,
violated the Appellant's First and Fourteenth Amendments, and thus violated 42
U.S.C. § 1983. It is clear that if the retaliation resulted in a procedural violation of
due process, namely, depriving the Appellant of his right to notice and an
opportunity to be heard before losing his right to continued enrollment, then not only
was the First Amendment violated, but also the Fourteenth Amendment.

77. Therefore, had the District Court properly analyzed whether the Appellant
stated a cause of action for which relief could be granted, the Court would have
found that the Appellant stated a plausible cause of action under the First

Amendment for retaliation and the Fourteenth Amendment for deprivation of due process as a result of Judge Bernstein's retaliatory acts.

## COUNT 3 It's Against Parties that Were Never Properly Joined
## COUNT 4

78. Count 4 is a "Petition for Prospective Declaratory Judgment Under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57"

79. "28 U.S.C. § 2201 (1982), echoing 1552*1552 the 'case or controversy' requirement of article III of the Constitution, provides that a declaratory judgment may only be issued in the case of an 'actual controversy.' That is, under the facts alleged, there must be a *substantial continuing controversy between parties* having adverse legal interests." **Emory v. Peeler**, 756 F. 2d 1547 (11th Cir. 1985), (*citing* **Lake Carriers' Association v. MacMullan**, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972).

80. In this case, the Appellant's allegations demonstrate an ongoing controversy concerning his inability to access the courts and his claim that retaliation by judicial officers, including those at the Appellate level, continues to harm him.

81. Declaratory relief is appropriate if the Plaintiff can demonstrate a likelihood of future harm or ongoing deprivation of constitutional rights. For instance, the allegations of being barred from filing anything suggest ongoing harm, and being

denied due process by the Appellate court refusing to apply proper legal standards suggests ongoing harm.

82. Therefore, the petition for Prospective Declaratory Judgment Under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, is justified by the facts stated under COUNT 4.

## COUNT 5

83. "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." **Fullman v. Graddick**, 739 F. 2d 553 (11th Cir. (1984) (*citing* **Ostrer v. Aronwald**, 567 F.2d 551 (2d Cir.1977)

84. A conspiracy under § 1983 requires (1) an agreement by two or more individuals to deprive a person of his constitutional rights, and (2) the commission of an overt act that results in "an actual denial of one of his constitutional rights." **Weiland**, 792 F.3d at 1327.

85. ***Existence of a Conspiracy (Agreement):*** Paragraphs 169-170 allege that state actors (e.g., Judges Bernstein, Del Rey, and Multack) conspired with private individuals (e.g., Hernandez and Martinez) to achieve a common objective of depriving Mr. Polo of his constitutional rights.

86. The "meeting of the minds" is alleged in the form of coordinated actions, such as fabricating emergencies, delaying motions, and influencing decisions, which courts may infer from circumstantial evidence if sufficiently detailed.

87. **Overt Acts in Furtherance**: The Complaint describes numerous overt acts by the alleged conspirators, including: (1) Fabricating a false emergency to justify depriving Mr. Polo of custody (Paragraph 174); (2) Entrapping Mr. Polo into actions that could serve as pretexts for custody changes or contempt findings (Paragraphs 175-177); (3) Preventing Mr. Polo from filing motions or participating in hearings, thereby denying him access to the courts (Paragraphs 191-194); (4) Intentionally misapplying legal principles or delaying rulings to harm Mr. Polo's ability to challenge decisions (Paragraphs 205-210).

88. These detailed allegations outline specific acts that could support a plausible inference of conspiracy.

89. *State Action:* The Complaint identifies state actors (e.g., judges and magistrates) who allegedly abused their judicial authority to carry out the conspiracy.

90. Private individuals, such as Segarra, Hernandez, and Martinez, are alleged to have acted in concert with these state actors by fabricating evidence, influencing

court proceedings, and creating false allegations. If proven, these collaborations satisfy the state action requirement.

91. **Constitutional Violations**: The allegations assert multiple violations of constitutional rights, including (1) *Denial of Access to the Courts*: Repeated orders barring Mr. Polo from filing motions without notice or opportunity to be heard (Paragraphs 191, 194); (2) *Procedural Due Process*: Fabricated emergencies, false allegations, and delayed motions deprived Mr. Polo of custody rights without adequate legal process (Paragraphs 174-181); and (3) *Retaliation*: Adverse actions allegedly taken in response to Appellant's exercise of First Amendment-protected activities, including his legal filings and public advocacy against judicial corruption.

92. Therefore, the allegations contained in COUNT 5, when read liberally, outline a plausible conspiracy claim by describing coordinated actions, overt acts, and constitutional violations.

## COUNT 6

93. COUNT 6 is a count for Conspiracy to Deprive Mr. Polo of His Right to Continued Enrollment at STU Without Due Process of Law

94. This count alleges that Judge Bernstein, Manuel A. Segarra III, and Merlin Hernandez conspired to deprive Mr. Polo of his property interest in continued enrollment at St. Thomas University (STU) without due process of law, in violation

of 42 U.S.C. § 1983. The Plaintiff asserts that the Defendants acted under color of state law and in concert with STU officials to fabricate a pretext for expulsion.

95. As previously stated, a conspiracy under § 1983 requires (1) an agreement by two or more individuals to deprive a person of his constitutional rights, and (2) the commission of an overt act that results in "an actual denial of one of his constitutional rights." **Weiland**, 792 F.3d at 1327.

96.1. *Agreement to Violate Constitutional Rights*: Paragraphs 218-219 allege that Judge Bernstein convened a meeting with STU officials (Dean Lawson and Dean Moore) to conspire to fabricate a pretext for expelling Mr. Polo from law school using STU's Honor Council process.

97. The allegation of a "meeting" where this agreement was made supports the existence of a conspiracy.

98. Paragraph 220 further asserts that the Honor Council rules prohibited such interference to resolve "personal conflicts," which strengthens the claim that the Defendants acted improperly in furtherance of the agreement they had with Bernstein.

99. Moreover, the timeline of events shows a synchrony between when STU made the agreement, and next day Scott Bernstein removed the Appellant's access to the Court without notice and opportunity to be heard.

100.    Judge Bernstein is clearly a state actor, as he was acting in his capacity as a state judge.

101.    STU officials (Dean Lawson and Dean Moore) and private individuals (e.g., Manuel A. Segarra) allegedly collaborated with Judge Bernstein. If true, their actions could be attributed to state action under joint action doctrine, where private parties act jointly with state actors to violate constitutional rights.

102.    The allegation that Bernstein sent a letter in the "absence of all jurisdiction" containing his order of recusal, meaning that he was not the judge in the case anymore, reinforces that his actions may fall outside judicial immunity protections.

103.    *Overt Acts in Furtherance of the Conspiracy*: Paragraph 219: Bernstein sent a letter containing his order of recusal as pretext to initiate the Honor Council process.

104.    Paragraph 222: Segarra allegedly acted as an investigator for STU, providing filings to be used against Mr. Polo.

105.    Paragraph 223: Dean Lawson finalized the expulsion based on allegedly false grounds.

106.    *Deprivation of a Constitutional Right*: Property Interest: The Plaintiff claims a property interest in continued enrollment at STU, stemming from the terms

of the "Student Handbook 2014-2015." Courts have recognized such property interests when there is a contractual relationship between a student and an educational institution.

107.    Lack of Due Process: The Plaintiff alleges that STU officials failed to follow their own Honor Code rules and did not base their decision on clear and convincing evidence as required. Additionally, he claims he was not afforded meaningful notice or an opportunity to be heard.

### 6.  ISSUE No. 3

### (A)    Standard of Review de Novo

108.    **Hopper v. Solvay Pharm., Inc.**, 588 F.3d 1318, 1324 (11th Cir. 2009) (holding that a dismissal with prejudice is reviewed de novo)

109.    The dismissal with prejudice is an extreme and improper sanction under **Weiland**, 792 F.3d 1313, which requires (1) a pattern of delay or *willful contempt*, and (2) a finding that lesser sanctions would not suffice. The Court failed to meet these criteria in this case.

110.    The dismissal with prejudice was improper under **Weiland**, which requires a pattern of delay or willful contempt and a finding that lesser sanctions would suffice. The court failed to meet these criteria. While citing Abdulla v. S. Bank, the court overlooked the Appellant's significant improvements to the complaint, reducing it from 140 pages to 40, organizing facts, and providing

supporting details. Classifying it as a "shotgun pleading" was an error, as the complaint was focused and organized, contrary to typical shotgun complaints. I cannot be said that the Complaint fails to state a cause of action.

111.    There was no claim of confusion from the Appellees, nor did they request a more definite statement, indicating the complaint was sufficiently clear. Dismissing with prejudice was an extreme sanction, as there was no evidence of willful contempt or bad faith. The Appellant's efforts to comply with court instructions should not have been disregarded. The dismissal with prejudice unjustly harms the Appellant, forcing litigation in a biased state court system that has infringed on his rights, and should be reversed.

## CONCLUSION

112.    The judge's failure to recuse himself violated the Appellant's due process rights under the Fifth Amendment, as well as his First Amendment right to access the courts, constituting an abuse of discretion under 28 U.S.C. § 455. His failure to disclose a relationship with a political rival and his inconsistent rulings necessitate vacating the lower court's judgment and reassignment to preserve judicial integrity.

113.    The lower court improperly dismissed the complaint without applying the correct legal standard for shotgun pleadings and without addressing the pending motion to dismiss. The Appellant's complaint clearly stated a cause of action and

put the defendants on notice. The dismissal with prejudice is unjust, as the Appellant made significant efforts to comply with court directives, and no evidence of willful misconduct exists to justify such a severe sanction. The case involves political retaliation, and the Appellant cannot expect a fair trial in the biased state court system.

**WHEREFORE:** Appellant respectfully asks this court to:

114.    Remand this case to the District Court with instruction to assign a new judge to this case,

115.    Vacate the final judgment with instruction to allow this case to continue into the discovery stage without any further delay, or/and

116.    other and further relief as the court may deem to be just and proper.

Respectfully submitted,

By:    /s/    _____

Frank Polo Sr.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit and relies on the 30-page limit.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14 points Times New Roman.

By: _____ /s/
APPELLANT
Frank Polo
1475 SW 8th St. Apt. 411
Miami, FL. 33135
Phone: 305-901-3360
E-Mail: Frank.Polo@msn.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2025, a true and correct copy of the foregoing was filed in the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record on the Service List below.

Roberto J. Diaz
rjd@jpfitzlaw.com
J. Patrick Fitzgerald & Assoc., P.A.
110 Merrick Way, Suite 3-B
Coral Gables, FL 33134
Counsel for St. Thomas University

By: _____ /s/
APPELLANT
Frank Polo
1475 SW 8th St. Apt. 411
Miami, FL. 33135
Phone: 305-901-3360
E-Mail: Frank.Polo@msn.com

Page **1** of **4**

Jennifer Rebeca Perez Alonso
jalonso@beasleydemos.com
Stephanie Elaine Demos
sdemos@beasleydemos.com
Joseph W. Beasley
jbeasley@beasleydemos.com
Beasley, Demos & Brown, LLC
201 Alhambra Circle Suite 501
Coral Gables, Florida 33134
Counsels for Defendants Manuel
Segarra, and Segarra & Associates,
P.A.

Kathryn Brucia
kathryn.brucia@myfloridalegal.com
Martha Hurtado
Martha.Hurtado@myfloridalegal.com
Martine Legagneur
Martine.legagneur@myfloridalegal.com
Christopher Sutter
Christopher.sutter@myfloridalegal.com
Office of the Attorney General
110 SE 6th St Ste 1200
Fort Lauderdale, FL 33301-5031
Counsels for Scott Bernstein, Marcia
Del Rey, Spencer Multack, and Thomas
Logue